**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>Adrienne Grace,<br><br>Debtors. | Bankruptcy Case No. 26-10565-TBM<br>Chapter 13 |
| Adrienne Grace,<br><br>Plaintiff,<br><br>v.<br><br>Erik R. Sale and Kalli S. Sale,<br><br>Defendants. | Adv. Pro. No. 26-01060-TBM |

**ORDER DENYING IN-PART AND GRANTING IN-PART MOTION TO DISMISS COMPLAINT**

## I. Introduction.

Adrienne Grace, the Plaintiff-Debtor (the "Plaintiff"), initiated this Adversary Proceeding and brought claims to recover certain payments she made to Erik R. Sale and Kalli S. Sale (the "Defendants"). The Defendants responded by filing a Motion to Dismiss requesting dismissal of all the causes of action against them under Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012, for failure to state a claim upon which relief can be granted. The Court determines that the Plaintiff has alleged sufficient facts to properly state the Third Claim for Relief but not the First or Second Claim for Relief. Thus, for the reasons set forth below, the Court grants Defendants' Motion to Dismiss in-part and denies in-part.

## II. Jurisdiction and Venue.

This Court has jurisdiction to adjudicate the Motion to Dismiss presented in this Adversary Proceeding pursuant to 28 U.S.C. § 1334. The dismissal contest is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate) and (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Procedural Background.

### A. The Debtor's Main Bankruptcy Case.

On January 30, 2026 (the "Petition Date"), the Plaintiff filed for relief under Chapter 13 of the Bankruptcy Code,[1] thereby commencing the bankruptcy case captioned: *In re Adrienne Grace*, Case No. 26-10565-TBM (Bankr. D. Colo.) (the "Main Case").[2] On, April 9, 2026, the Defendants filed Proof of Claim No. 9-1 (the "Claim") for $123,893.54 as a general unsecured claim. The Rider to Defendants' Claim states that the "[i]ndebtedness is comprised of $109,236.00 in unpaid rent; $5,461.80 in late fees; $1,363.94 in pre-petition interest accrued pursuant to Colo. Rev. Stat. § 5-12-102(1)(b); and $7,687.39 in pre-petition attorney's fees and costs." The Defendants further state the Claim "was incurred pursuant to and is evidenced by that certain Residence Lease dated December 15, 2022, by and between Creditors, as 'Landlord,' and Debtor, as 'Tenant,' whereby Creditors leased the premises situated at 3121 Bellflower Drive #B, Vail, Colorado 81657."

On June 24, 2026, the Plaintiff filed her amended Chapter 13 Plan (Main Case Docket No. 31, the "Chapter 13 Plan"). The Chapter 13 Plan did not include any funds for the Defendants or their claim. The Chapter 13 Plan stated that the Plaintiff "has claims against Erik Sale including but not limited to: breach of contract and state law tort claims related to sale of real estate. Recovery may be an asset of the bankruptcy estate. Should debtor prevail, funds may be committed to the chapter 13 plan on behalf unsecured creditors."

On June 29, 2026, Plaintiff filed an "Objection to Proof of Claim No. 9-1" (Main Case Docket No. 38, the "Claim Objection") that stated that the "Debtor believes that allowance of Creditors to share in the distributions under the Debtor's most recent Chapter 13 Plan would prejudice the Debtor as well as other unsecured creditors because the Claim is contingent on the outcome of the Adversary Proceeding."

On July 14, 2026, the Court confirmed the Chapter 13 Plan (Main Case Docket No. 41). Later on July 28, 2026, the Defendants filed a Limited Objection to the Claim Objection (Main Case Docket No. 44, the "Limited Objection") that requested "that [Defendants'] pro rata share of Plan payments shall be set aside with the Chapter 13 Trustee and reserved (rather than distributed) until the Adversary Proceeding is fully resolved."

---

[1] All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[2] The Court uses the convention "Main Case Docket No. ___" to refer to documents filed in the CM/ECF system in the Main Case. The Court uses the convention "Docket No. ___" to refer to documents filed in the CM/ECF system in this Adversary Proceeding: *Adrienne Grace v. Erik R. Sale and Kalli S. Sale*, Adv. Pro. No. 26-01060-TBM (Bankr. D. Colo.) (the "Adversary Proceeding").

**B. <u>The Adversary Proceeding</u>.**

On March 12, 2026, Adrienne Grace filed a "Complaint" (Docket No. 1), thereby commencing this Adversary Proceeding. In the Complaint, Plaintiff asserted three claims for relief and attached: (1) a Contract to Buy and Sell Real Estate (Residential) approved by the Colorado Real Estate Commission dated December 15, 2022 (the "Contract"); (2) an Addendum to the Contract dated December 15, 2022 (the "Addendum"); and (3) a Residence Lease dated December 15, 2022 (the "Lease").

In her First Claim for Relief, the Plaintiff seeks the "return of all payments made on the contract, together with statutory interest . . . and reasonable attorney fees and costs," alleging that Defendants "failed to comply with the mandatory filing requirements of C.R.S. § 38-35-126(2) with the Eagle County Treasurer and Assessor." Compl. ¶¶ 33, 31. Plaintiff alleges that the Contract, Addendum, and Lease collectively constitute a "contract for deed to real property" within the meaning of C.R.S. § 38-35-126(1)(b). *Id.* ¶ 30. Plaintiff further alleges that she "properly and timely exercised her statutory option under C.R.S. § 38-35-126(3) to void the Contract for Deed by written notice on or about September 9, 2025." *Id.* ¶ 32. According to the Plaintiff, "[u]pon voidance of the Contract for Deed, C.R.S. § 38-35-126(3) entitles Plaintiff to the return of all payments made on the contract, together with statutory interest as defined in C.R.S. § 5-12-102 and reasonable attorney fees and costs." *Id.* ¶ 33. Plaintiff alleges that Defendants have "refused to return any payments or comply with their statutory obligations." *Id.* ¶ 34. Accordingly, the Plaintiff seeks judgment against the Defendants for: (1) "[r]eturn of the $400,000 payment made on or about December 15, 2022, plus statutory interest at 8% per annum . . ."; (2) "[r]eturn of all lease and related payments from December 2022 through August 2025 totaling $296,066, plus statutory interest at 8% per annum . . . "; (3) "[r]eturn of all amounts paid by Plaintiff for repairs, utilities, maintenance, insurance, taxes, and other costs associated with the Property . . . plus statutory interest"; and (4) "Plaintiff's reasonable attorney fees and costs pursuant to C.R.S. § 38-35-126(3) and C.R.S. § 5-12-102" (collectively, the "Payments"). *Id.* ¶ 35.

In the Second Claim for Relief, pled as an alternative claim, the Plaintiff sought to avoid the same Payments to the Defendants, asserting that the Defendants have been "unjustly enriched at Plaintiff's expense" and that the "Plaintiff conferred substantial monetary benefits on Defendants, including the $400,000 payment, the lease payments totaling $296,066, and payment of substantial carrying costs for the Property." *Id.* ¶¶ 37- 38.

In the Third Claim for Relief, also pled as an alternative claim, the Plaintiff specifically seeks to avoid the $400,000 earnest money and/or liquidated damages payment, as a "unlawful penalty under Colorado law" that should be "declared void and unenforceable." *Id.* ¶¶ 51-52.

The Defendants responded to the Complaint by filing the "Motion to Dismiss Complaint Pursuant to Fed. R. Bankr. 7012 and Fed. R. Civ. P. 12(b)(6)" (Docket No. 4, the "Motion to Dismiss"). In response, the Plaintiff filed her "Response in Opposition to

Motion to Dismiss Complaint Pursuant to Fed. R. Bankr. 7012 and Fed. R. Civ. P. 12(b)(6)" (Docket No. 5, the "Response"), disputing that the Complaint should be dismissed. Thereafter, Defendants' filed their "Reply in Support of Motion to Dismiss Complaint Pursuant to Fed. R. Bankr. 7012 and Fed. R. Civ. P. 12(b)(6)" (Docket No. 10, the "Reply"). And, the Plaintiff filed a "Motion for Leave to File Sur-Reply in Opposition to Defendants' Motion to Dismiss" (Docket No. 11, the "Motion to File Sur-Reply") which the Defendants opposed (Docket No. 12). The Court granted the Motion to File Sur-Reply (Docket No. 13) which was filed as the "Sur-Reply in Opposition to Defendants' Motion to Dismiss" (Docket No. 14, the "Sur-Reply"). The matter is now ripe for determination.

## IV. Legal Standard for Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6) (as incorporated by Fed. R. Bankr. P. 7012), the Court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the Plaintiff. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). Under the refined pleading standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 55`0 U.S. 544 (2007), a complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). *See also Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (referring to clarified standard under *Twombly* and *Iqbal* as a "refined standard").

Under the "refined standard," a claim is considered "plausible" when the complaint contains facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Plausible" does not mean "probable", although the plaintiff must show that its entitlement to relief is more than speculative. *Twombly*, 550 U.S. at 555, 556-57. If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Kansas Penn*, 656 F.3d at 1215 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) and *Twombly*, 550 U.S. at 570). Put another way, "the complaint must give the Court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

"The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn*, 656 F.3d at 1215; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Thus, the Tenth Circuit has held that "the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a

formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins*, 519 F.3d at 1247 (internal quotation marks and citations omitted in *Khalik*).

The Court is bound to accept only factual allegations as true and will not give deference to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As a result, courts often begin their analysis by identifying allegations that are no more than conclusions and, therefore, not entitled to the "assumption of truth." *Id.* at 679. Legal conclusions must be supported by well-pleaded factual allegations, which can be assumed as true and evaluated as to whether they plausibly give rise to the requested relief. *Id.* This process is a context-specific task which depends on the elements of a particular claim and requires the Court to draw upon its judicial experience and common sense. *Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 679). Careful evaluation is necessary both to ensure that a defendant is sufficiently able to prepare her defense and to avoid "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn*, 656 F.3d at 1215 (internal quotation omitted).

Ultimately, the critical question is: "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the compliant "raise[s] a right to relief above the speculative level.'" *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). It is a low threshold. "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias*, 567 F.3d at 1178 (quoting *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir. 2001)). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

When deciding a motion to dismiss, courts "consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.,* 680 F.3d 1194, 1201 (10th Cir. 2011).

## V. <u>Summary of General Factual Allegations in the Complaint</u>.

In the Complaint, the Plaintiff presented 17 paragraphs of general alleged facts (paragraphs 10-27) under the heading "General Factual Allegations." For purposes of this Order, the Court summarizes the key alleged facts, which must be accepted as true, as follows:

On December 15, 2022, the Plaintiff and the Defendants entered into the Contract to purchase and sell 3121 Bellflower Dr. #B, Vail, Colorado 81657 (the "Property") for a purchase price of $1,700,000, with a scheduled closing date of November 18, 2026. Compl. ¶¶ 9, 10. The Contract was accompanied by the

Addendum and the Lease, each dated December 15, 2022, and incorporated into the Contract. Compl. ¶ 11. Plaintiff paid an initial, non-refundable $400,000 earnest-money deposit/down payment and was required to make substantial monthly payments to Defendants while in possession of the Property. Compl. ¶ 12. The Court refers to the foregoing as the "Earnest Money Deposit."

Following execution of the Contract, Plaintiff took possession of the Property and used it as a short-term rental through Airbnb and similar platforms. Compl. ¶ 13. Plaintiff began making monthly payments to Defendants under the Lease in December 2022. Compl. ¶ 14. From December 2022 through August 2025, Plaintiff made payments to Defendants totaling $296,066. Compl. ¶ 15. While in possession of the Property, Plaintiff also paid for substantial repairs, utilities, maintenance, insurance, taxes, and other carrying costs associated with the Property. Compl. ¶ 16. During the same period, Plaintiff received rental income from Airbnb and other short-term rentals, which only partially offset the lease payments and carrying costs. Compl. ¶ 17.

The parties' arrangement required the Plaintiff to take possession of the Property and assume certain burdens of ownership while postponing delivery of the deed until the scheduled closing in November 2026, conditioned on Plaintiff's completion of specified payments under the Contract and Lease. Compl. ¶ 18. The claims arising from the transaction constitute property of the bankruptcy estate under 11 U.S.C. § 541(a). Compl. ¶ 19.

Defendants failed to file a written notice of transfer with the Eagle County Treasurer and a real estate transfer declaration with the Eagle County Assessor within ninety days of executing and delivering the Contract for Deed. Compl. ¶ 23. On September 9, 2025, Plaintiff provided written notice to Defendants of her election to void the Contract for Deed pursuant to C.R.S. § 38-35-126(3) and demanded the return of all payments made to Defendants. Compl. ¶ 26. Defendants have refused to acknowledge Plaintiff's election voiding the Contract for Deed and have refused to return any of the payments made by Plaintiff. Compl. ¶ 27.

## VI. <u>Legal Analysis</u>.

In the Motion to Dismiss, the Defendants requests that the Court dismiss the First, Second, and Third Claims for Relief based on an alleged "failure to state a claim upon which relief can be granted" pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012.

### A. <u>The Court Grants Dismissal of the First Claim for Relief</u>.

#### 1. <u>Elements of Claim under C.R.S. § 38-35-126</u>.

The Plaintiff pleads a claim for statutory damages and restitution of the Payments under C.R.S. § 38-35-126(3), which provides:

> The buyer shall have the option of voiding any contract for deed to real property which fails to designate the public trustee as escrow agent for deposit of property tax moneys or for which no written notice is filed with the county treasurer's office or the county assessor's office. Upon voidance of such contract, the buyer shall be entitled to the return of all payments made on the contract, with statutory interest as defined in section 5-12-102, C.R.S., and reasonable attorney fees and costs. This avoidance right shall expire on the date seven years after the latest execution date on the contract for deed to real property unless exercised prior to such date.

The other operative statute is C.R.S. § 38-35-126(2), which requires the seller of a contract for deed to real property to take certain actions, including:

> Within ninety days of executing and delivering a contract for deed to real property, the seller shall file with the county treasurer of the county wherein the real property is located a written notice of transfer by contract for deed to real property. Such notice shall not operate to convey title. Such notice shall include the name and legal address of the seller, the name and legal address of the purchaser, a legal description of the real property, the date upon which the contract for deed to real property was executed and delivered, and the date or conditions upon which the deed to the real property will be delivered to the purchaser, absent default. In addition, within ninety days of executing and delivering the contract for deed to real property, the seller shall file a real estate transfer declaration with the county assessor of the county wherein the property is located, pursuant to the provisions of section 39-14-102, C.R.S.

However, to fall within the aegis of C.R.S. § 38-35-126, the contract must be a *contract for deed to real property*. Subsection (1)(b) of C.R.S. § 38-35-126 defines a contract for deed to real property as:

> . . . a contract for the sale of real property which provides that the purchaser shall assume possession of the real property and the rights and responsibilities of ownership of the real property but that the deed to such real property will not be delivered to the purchaser for at least one hundred eighty days following the latest execution date on the contract for deed to real property and not until the purchaser has met certain conditions such as payment of the full contract price or a specified portion thereof. "Contract for deed to real property" includes installment land contracts.

In Colorado, installment land contracts are considered "secured financing arrangement[s] . . ." where "[t]he sellers h[o]ld the title in escrow pending fulfillment of contract terms" *Lucero v. Ulvestad*, 411 P.3d 949, 953 (Colo. App. 2015) (quoting *Sleeping Indian Ranch, Inc. v. West Ridge Grp., LLC*, 119 P.3d 1062, 1068 (Colo. 2005)). Under a contract for deed, "[t]he purchaser assume[s] possession of the realty and the rights and responsibilities of ownership while the seller retain[s] the legal title until the contract [is] paid in full." *Id.* Thus, "possession and equitable title are in the purchaser, with the seller retaining bare legal title." *Lucero,* 411 P.3d at 953. Put another way, "the vendee's interest under the contract is considered realty so that the vendee is entitled to all benefits attaching to the property, and unless the contract indicates otherwise, he assumes all responsibilities or losses as well." *Sleeping Indian Ranch*, 119 P.3d at 1068. "Consequently, under the installment land contract, the vendor's interest is classified as 'personalty,' that is, he retains no interest in the real property." *Id.* at 1069. "At the time of the execution of the contract, the [buyers] bec[o]me the equitable owners of the land, possessing all the incidents of ownership." *Id.*

**2. <u>The Contract is not a Contract for Deed to Real Property</u>.**

In this case, as previously set out, there is a transaction which consists of three operative instruments: (1) the Contract (2) the Addendum and (3) the Lease. Thus, per *Sleeping Indian Ranch*, for a contract to fall within the requirements of C.R.S. § 38-35-126 the buyer must "assume[] all responsibilities or losses" of the real property.

Under the plain terms of the Lease, the Plaintiff did **not** assume all rights and responsibilities of ownership. The Lease imposed numerous restrictions on the Plaintiff's use of the Property, including:

- The term of the Lease was to run from "from twelve o'clock noon on the 15th day of December 2022 and until 11:59 p.m. on the 30th day of November 2023" with the option to renew the term for up to four years. Ex. 1, pp. 24-25, ¶¶ 4, 6.

- The Plaintiff was to "return the [Property] at the expiration of the Term in as good condition as when [Plaintiff] entered the [Property.]" Id. at p. 25, ¶ 7.

- If the Plaintiff wishes to change "those listed as Tenants in the Lease" the "Landlord must approve" such changes. Id. at p. 26, ¶ 16.a.

- The Plaintiff was prohibited from participating in "hazardous or dangerous activities" at the Property. Id. at p. 26, ¶ 16.b.

- The Plaintiff was "to limit use of the [Property] to those consistent with the [Property's] clean, safe, sanitary, and habitable condition." Id. at p. 26, ¶ 16.d.

- The Plaintiff could not "knowingly, intentionally, deliberately, or negligently destroy, deface, damage, impair, or remove any part of the [Property.]" Id. at p. 28, ¶ 26.

- The Plaintiff was prohibited from "perform[ing] or contract[ing] with third parties to perform any repairs of any kind on the [Property] or structure on which the [Property] [is] located without the written consent of [Defendants]." Id. at p. 28, ¶ 27.

- The Plaintiff was required to "obtain renter's insurance at [Plaintiff's] sole cost and expense." Id. at p. 30, ¶ 34.

- The Plaintiff was prohibited from "[p]ossession, use, and/or cultivation of marijuana on the [Property]" despite Colorado law permitting "the use of medical marijuana in specific and limited circumstances." Id. at p. 32, ¶ 52.

The Plaintiff does not dispute the existence of these restrictions. By contrast, the Defendants retained significant responsibilities and rights with respect to the Property. This includes:

- Paying two-thirds the cost of driveway maintenance and half the cost of trash and recycling services. Ex. 1, p. 25, ¶ 9.

- Responsibility for "maintenance and repair of all structural components, interior and exterior walls, floors, ceiling, roofs, sewer connections, plumbing, wiring, appliances and glass used in connection with the [Property.]" *Id*. at p. 28, ¶ 33.

- Responsibility for the "Premises to be insured as Landlord deems appropriate. *Id.* at p. 30, ¶ 34.

- If the Property was partially or totally destroyed "by fire, the elements, or other casualty, Landlord shall promptly repair the [Property] with reasonable dispatch after notice of such partial destruction." *Id.* at p. 30, ¶ 34.a. and d.

- The Defendants were permitted to enter "the [Property] at reasonable hours for reasonable purposes." *Id.* at p. 31, ¶ 37.

For purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true, and all reasonable inferences are drawn in the Plaintiff's favor. However, even accepting that the Plaintiff paid "substantial repairs, utilities, maintenance, insurance, taxes, and other carrying costs associated with the Property" (Compl. ¶ 16) the foregoing does not establish that the Plaintiff took on "all rights and

responsibilities of ownership." It is not disputed that under the plain terms of the Lease, the Plaintiff was subject to various restrictions on her use of the Property, and the Defendants retained certain responsibilities and rights.

Indeed, the existence of a lease itself demonstrates that the Plaintiff, did not "assume[] all responsibilities or losses" as it would under a true installment land contract; otherwise, no lease would have been necessary.

Thus, the Court need not address whether the deed "will not be delivered to the purchaser for at least one hundred eighty days," because the agreement is not an contract for deed to real property or an installment land contract as the Debtor has not assumed "all the rights and responsibilities of ownership." Accordingly, the Contract, the Addendum, and the Lease falls outside the requirements of C.R.S. § 38-35-126. The Court thus dismisses the First Claim for Relief.

**B. <u>The Court Grants Dismissal of the Second Claim for Relief</u>.**

In the Second Claim for Relief, pled as an alternative claim, the Plaintiff seeks to avoid the Payments to the Defendants, asserting that the Defendants have been "unjustly enriched at Plaintiff's expense."

**1. <u>Elements of a Unjust Enrichment Claim</u>.**

"Unjust enrichment is a form of quasi-contract or a contract implied in law." *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000) (citing *Dove Valley Bus. Park Assocs., Ltd. v. Board of County Comm'rs of Arapahoe County*, 945 P.2d 395, 403 (Colo. 1997)). "[I]t is an equitable remedy and does not depend on any contract, oral or written." *Salzman* 996 P.2d at 1265 (citing *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093, 1097 (Colo. 1982)). "Rather, it is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another." *Id.*

"In Colorado, a plaintiff seeking recovery for unjust enrichment must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Salzman* 996 P.2d at 1265-1266 (citing *DCB Constr. Co. v. Central City Dev. Co.,* 965 P.2d 115, 119–20 (Colo. 1998)).

"In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Bedard v. Martin*, 100 P.3d 584, 591-92 (Colo. App. 2004) (citing *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist*., 77 P.3d 814, 816 (Colo. App. 2003)); *see Bd. of Governors of Colorado State Univ. v. Alderman, 563 P.3d 1205, 1214* (Colo. 2025) (holding "that a party cannot properly state a claim for unjust enrichment when a legally enforceable contract exists that covers the same subject matter and that contract has not been abrogated or rescinded").

However, there are two exceptions to this general rule:

- "First, a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract." *Interbank,* 77 P.3d at 816 (citing *Scott Co. v. MK-Ferguson* Co., 832 P.2d 1000 (Colo. App. 1991)).

- "Second, a party can recover on a quasi-contract when the party 'will have no right under an enforceable contract.'" *Interbank,* 77 P.3d at 816 (citing *Backus v. Apishapa Land & Cattle Co*., 44 Colo. App. 59, 62, 615 P.2d 42, 44 (1980)). "For example, quasi-contractual recovery may be allowed when an express contract failed or was rescinded." *Interbank,* 77 P.3d at 816.

The existence of an express contract is a question of fact. *Id.* "Application of the rule that an express contract supersedes a quasi-contract covering the same subject is a question of law." *Id.*

**2. <u>The Second Claim Does Not State a Claim for Unjust Enrichment</u>.**

As previously set out, the land transaction at issue here consists of three operative instruments: (1) the Contract (2) the Addendum and (3) the Lease. The classic elements of an express contract are present and not disputed: "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *Ascentium Cap. LLC v. Premiere Copier, Inc.,* 751 F. Supp. 3d 1164, 1173 (D. Colo. 2023) (quoting *Trujillo v. City of Colorado Springs*, No. 07-cv-00753, 2008 WL 511890, at *3 (D. Colo. Feb. 22, 2008)).

The Plaintiff's new argument in her Response that the "enforceability, legality, and scope of the written instruments are disputed" is unavailing. The Plaintiff does not contest the existence or validity of these instruments in the Complaint, nor does the Complaint contain any allegations challenging their validity. As the Defendants correctly observe in their Reply, the Plaintiff only "challenges enforcement of certain provisions or the application of an additional statute." Instead, the Plaintiff appears to raise these issues for the first time in its Response.

Thus, the parties entered into a written express contract. The question, then, is whether the claim falls within either of the two exceptions identified in *Alderman* and *Interbank*. First, the Court must determine whether the unjust-enrichment claim "covers conduct outside the express contract" or "arose subsequent to the express contract."

The Complaint alleges that "Defendants' monthly receipts from Plaintiff substantially exceeded Defendants' mortgage, tax, and other carrying obligations, resulting in substantial net financial benefits to Defendants" and that the "Defendants induced Plaintiff to enter into the Contract for Deed and Lease by representation that

the Property would generate rental income sufficient to cover or exceed monthly payments and expenses, which proved untrue and were materially misleading."

Both allegations fall squarely within the subject matter of the three operative instruments (i.e. the sale and lease of the Property). The second question, whether the claims at issue "arose subsequent to the express contract," is more difficult. The Plaintiff could argue that the rental income she received, which allegedly did not meet her expectations, arose after the parties entered into the contract. That argument ultimately fails, however, because the Defendants' alleged conduct, "inducing Plaintiff to enter into the Contract," necessarily occurred before the contract was executed.

Second, the Court must determine whether the party "will have no right under an enforceable contract." That exception is plainly inapplicable here. The operative instruments ultimately provide for Plaintiff to acquire ownership of the property and to possess the property in the meantime. The Contract has not been abrogated or rescinded (although Plaintiff's claims seek that result). The Court thus dismisses the Second Claim for Relief.

## C. <u>The Court Denies Dismissal of the Third Claim for Relief</u>.

In the Third Claim for Relief, also pled as an alternative claim, the Plaintiff specifically seeks to avoid the $400,000 earnest money and/or liquidated damages payment, as a "unlawful penalty under Colorado law" that should thus be "declared void."

### 1. <u>Elements of a Excessive Liquidated Damages Claim</u>.

In Colorado "[a] liquidated damages provision is valid and enforceable if three elements are met: (1) 'the parties intended to liquidate damages'; (2) 'the amount of liquidated damages, when viewed as of the time the contract was made, was a reasonable estimate of the presumed actual damages that the breach would cause'; and (3) 'when viewed again as of the date of the contract, it was difficult to ascertain the amount of actual damages that would result from a breach.'" *Ravenstar, LLC v. One Ski Hill Place, LLC*, 401 P.3d 552, 555 (quoting *Klinger v. Adams Cty. Sch. Dist*. No. 50, 130 P.3d 1027, 1034 (Colo. 2006)). "If any one of the elements is not met, the provision is an invalid penalty." *Id.* "A penalty differs from a liquidated damages clause because 'a penalty is designed to punish for a breach of contract[,] whereas liquidated damages are intended as fair compensation for the breach.'" *Ravenstar,* 401 P.3d at 555 (quoting 25A C.J.S. Damages § 200 (2016)). "The presence of a liquidated damages provision 'itself is evidence of the parties' intention to liquidate damages in advance.'" *Ravenstar,* 401 P.3d at 555 (quoting *Oldis v. Grosse-Rhode*, 35 Colo. App. 46, 528 P.2d 944, 947 (1974)).

At the same time, Colorado courts "recognize a strong policy of freedom of contract." *Ravenstar,* 401 P.3d at 555 (citing *City & Cty. of Denver v. Dist. Court*, 939 P.2d 1353, 1361 (Colo. 1997)) ("The right of parties to contract freely is well developed in our jurisprudence.").

Generally determining "whether the specified damages constitute a penalty is a question of fact" "unless the contract reveals on its face that the stipulated payment is so disproportionate to any possible loss as to constitute a penalty." *Bd. of Cnty. Comm'rs of Adams Cnty. v. City & Cnty. of Denver*, 40 P.3d 25, 29 (Colo. App. 2001) (quoting *Yerton v. Bowden*, 762 P.2d 786 (Colo. App.1988)). The difficulty in ascertaining damages is assessed at the time of the contract, not afterwards. *Rohauer v. Little*, 736 P.2d 403, 411 (1987).

**2. <u>The Excessive Liquidated Damages Claim is Legally Plausible</u>.**

Here, the Complaint presents a series of instruments to buy and lease land. The Addendum states, in relevant part, that:

> EARNEST MONEY IS NON-REFUNDABLE. In furtherance of paragraph 20.1.2 of the Contract, and except as otherwise specifically set forth in the Contract (as supplemented by this Addendum), the Parties hereto acknowledge and agree that Buyer's Earnest Money of $400,000.00 (Four Hundred Thousand and No/100ths Dollars) is NON-REFUNDABLE. The Parties understand that Seller is providing Buyer an accommodation to extend the Closing date to approximately four years from the date of this Contract such that Buyer can use that time to hopefully secure lender financing to purchase the Property with a loan, however, Buyer shall not receive a return of her Earnest Money if she terminates this Contract due to Buyer's inability to obtain financing prior to Closing. Accordingly, the BUYER FULLY UNDERSTANDS, ACKNOWLEDGES, AND AGREES THAT FORFEITING HER EARNEST MONEY TO SELLER AS LIQUIDATED DAMAGES IS FAIR AND REASONABLE AND IS NOT A PENALTY BECAUSE (i) THE ANTICIPATED DAMAGES IN CASE OF BREACH IS UNCERTAIN AND/OR DIFFICULT TO PROVE, (ii) THE PARTIES INTEND TO LIQUIDATE THE DAMAGES IN ADVANCE, AND (iii) THE AMOUNT OF LIQUIDATED DAMAGES IS FAIR AND REASONABLE. Furthermore, from and after the Due Diligence Resolution Deadline, the Title Company shall immediately release the Earnest Money to Seller from Title Company's escrow or trust account and Seller may use the Earnest Money prior to Closing in Seller's sole and subjective discretion, subject to Seller's obligation to repay the Earnest Money to Buyer in the event the Contract terminates and Buyer has the right to receive a return of the same, which Buyer shall have the right to secure with a lien against the Property until such time as the Earnest Money is repaid, in full.

The Plaintiff alleges in the Complaint that "[t]he clause therefore functions as a punitive exaction designed to deter breach and to provide Defendants with a windfall,

rather than to compensate them for a reasonably estimated loss; as such, it is an unlawful penalty under Colorado law and is unenforceable" and thus "should be declared void."

The Defendants argue in the Response that "[b]ecause Plaintiff expressly acknowledged in the contract that, at the time of its formation and execution, all terms necessary for a liquidated damages provision to be found to be reasonable and therefore enforceable were met, no further facts would be elucidative or are necessary to hold the liquidated damages provision as valid and, as such, may not be voided.

Colorado law focuses on the substantive reality at the time of contract formation and whether the three elements for a valid liquidated damages provision are satisfied. No precedent holds that the parties' recitation of a particular set of words or phrases relieves the Court of its obligation to examine the circumstances at the time of formation. Under *Ravenstar,* a liquidated damages clause supplies evidence of only one element; the parties' "intention to liquidate damages in advance." The parties agreement that "ANTICIPATED DAMAGES IN CASE OF BREACH IS UNCERTAIN AND/OR DIFFICULT TO PROVE" and that "THE AMOUNT OF LIQUIDATED DAMAGES IS FAIR AND REASONABLE" is insufficient, by itself, to resolve the questions of fact before the Court. Freedom of contract does not require enforcement of provisions that contravene public policy or law. The Court thus denies the Motion to Dismiss as to the Third Claim for Relief.

## VII. <u>Conclusion and Orders</u>.

Accordingly, the Court

ORDERS that the Motion to Dismiss as to the First Claim for Relief is GRANTED. The Court

FURTHER ORDERS that the Motion to Dismiss as to the Second Claim for Relief is GRANTED. The Court

FURTHER ORDERS that the Motion to Dismiss as to the Third Claim for Relief is DENIED. The Court

FURTHER ORDERS that Defendants shall file an answer to the Third Claim for Relief in the Complaint, in accordance with the applicable Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure.

DATED this 11th day of September, 2026.

BY THE COURT:

Thomas B. McNamara,
United States Bankruptcy Judge